UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

KENTUCKY COAL ASSOCIATION, INC.,
JAMES ROGERS, III, J.L. ROGERS FAMILY,
LLC, TALMAGE ROGERS, TALMAR OF FL,
LLC, PAT EARLY, KIRSTINE EARLY,
BUCKINGHAM HOLLOW, LLC, KEVIN
LAWRENCE AND BIG BUCKS, LLC,
Plaintiffs,

v.                                                                    No. 4:14-cv-73-M

TENNESSEE VALLEY AUTHORITY,
Defendant.

## DEFENDANT TENNESSEE VALLEY AUTHORITY'S ANSWER

Defendant Tennessee Valley Authority (TVA) responds to Plaintiffs' Complaint as follows.

## NATURE OF THE ACTION

1.      Answering the allegations of paragraph 1, TVA admits that the Complaint challenges TVA's actions, but denies the substance of those allegations.

2.      Denied.

3.      Answering the allegations of paragraph 3, TVA states that it prepared an Environmental Assessment, determined the proposed action would have no significant effect on the quality of the human environment, and therefore prepared no Environmental Impact Statement.  Except as expressly admitted, the allegations of paragraph 3 are denied.

4.      Answering the allegations of paragraph 4, TVA states that in its Environmental Assessment it analyzed nine alternatives, including:  (a) a No Action Alternative under which TVA would continue to operate Paradise Fossil Plant's Units 1 and 2 without implementing activities to comply with EPA's Mercury and Air Toxics Standards; (b) Alternative B under

1

which TVA would install and operate pulse jet fabric filters on Paradise Fossil Plant's Units 1 and 2; and (c) Alternative C under which TVA would construct and operate a combustion turbine/combined cycle plant.  TVA admits that after completing the Environmental Assessment and issuing a Finding of No Significant Impact, it selected Alternative C.  Except as expressly admitted, the allegations of paragraph 4 are denied.

5.      Denied.

6.      Denied.

7.      Denied.

8.      Paragraph 8 and each of its subparagraphs (a) through (f) are denied.

9.      Denied.

10.     Denied.

11.     Denied.

12.     Denied.

13.     Paragraph 13 describes Plaintiffs' request for relief; TVA denies Plaintiffs are entitled to the requested relief or any relief.

## JURISDICTION, STANDING, AND VENUE

14.     Admitted.

15.     Answering the allegations of paragraph 15, TVA admits that the relief requested by Plaintiffs would be proper under 28 U.S.C. § 2201 and 5 U.S.C. §§ 705, 706, if Plaintiffs prove entitlement to that relief, but denies that Plaintiffs are entitled to that relief.

16.     Admitted.

17.     Admitted that the Administrative Procedure Act provides a private right of action for judicial review of agency action.  Except as expressly admitted, the allegations of paragraph 17 are denied.

2

18.     Denied.

19.     TVA admits that venue is proper in this district under 28 U.S.C. § 1391(b)(2) and

28 U.S.C. § 1391(e), but denies there are "adverse effects" of the decision Plaintiffs challenge.

As to the allegations in the second sentence of paragraph 19, TVA states that the United States

government owns the Paradise Fossil Plant and entrusts it to TVA's custody and control, and

admits that TVA maintains offices in this district.  Except as expressly admitted, the allegations

of paragraph 19 are denied.

## PARTIES

### Plaintiffs

20.     Upon information and belief, TVA admits the allegations of the first, second, and

fifth sentences of paragraph 20.  Answering the allegations of the fourth sentence of

paragraph 20, TVA states that it received comments expressing support for Alternative B.  TVA

denies the remaining allegations of paragraph 20.

21.     Upon information and belief, TVA admits the allegations of the first and second

sentences of paragraph 21.  TVA denies the remaining allegations of paragraph 21.

22.     Upon information and belief, TVA admits the allegations of the first three

sentences of paragraph 22, but specifically denies that Texas Gas Transmission, LLC is TVA's

"agent."  TVA lacks knowledge or information sufficient to form a belief about the truth of the

allegations of the fourth and fifth sentences of paragraph 22.  TVA denies the allegations of the

sixth and final sentence of paragraph 22.

23.     Upon information and belief, TVA admits the allegations of the first sentence of

paragraph 23.  TVA denies the remaining allegations of paragraph 23.

24.     Upon information and belief, TVA admits the allegations of the first three

sentences of paragraph 24 but specifically denies that Texas Gas Transmission, LLC is TVA's

3

"agent." TVA lacks knowledge or information sufficient to form a belief about the truth of the allegations of the fourth and fifth sentences of paragraph 24.  TVA denies the allegations of the sixth and final sentence of paragraph 24.

25.     Upon information and belief, TVA admits the allegations of the first four sentences of paragraph 25.  TVA denies the allegations of the fifth and final sentence of paragraph 25.

26.     Upon information and belief, TVA admits the allegations of the first three sentences of paragraph 26 but specifically denies that Texas Gas Transmission, LLC is TVA's "agent."  TVA lacks knowledge or information sufficient to form a belief about the truth of the allegations of the fourth and fifth sentences of paragraph 26.  TVA denies the allegations of the sixth and final sentence of paragraph 26.

27.     Upon information and belief, TVA admits the allegations of the first four sentences of paragraph 27.  TVA denies the allegations of the fifth and final sentence of paragraph 27.

28.     Upon information and belief, TVA admits the allegations of the first three sentences of paragraph 28, but specifically denies that Texas Gas Transmission, LLC is TVA's "agent."  TVA lacks knowledge or information sufficient to form a belief about the truth of the allegations of the fourth and fifth sentences of paragraph 28.  TVA denies the allegations of the sixth and final sentence of paragraph 28.

29.     Denied.

30.     Denied.

31.     TVA admits the allegations of the first two sentences of paragraph 31.  As to the allegations of the third sentence of paragraph 31, TVA states that the United States government owns the Paradise Fossil Plant and entrusts it to TVA's custody and control.

32.     Admitted.

33.     Admitted.

## LEGAL BACKGROUND

### The National Environmental Policy Act

34.     TVA admits that the statutory and regulatory language in the first and second sentences of paragraph 34 is accurately quoted in part.  TVA denies the allegations of the third sentence of paragraph 34.  Except as expressly admitted, the allegations of paragraph 34 are denied.

35.     TVA admits the allegation of the first sentence of paragraph 35.  TVA admits that the regulatory language contained in the second sentence of paragraph 35 is accurately quoted in part.  Answering the allegation of the third sentence of paragraph 35, TVA states that TVA's NEPA Procedures are intended to incorporate concepts and implement policies in the regulations promulgated by the Council of Environmental Quality at 40 C.F.R. §§ 1501-08.  Except as expressly admitted, the allegations of paragraph 35 are denied.

36.     TVA admits that the statutory and regulatory language contained in paragraph 36 is accurately quoted in part and states that NEPA and the regulations promulgated pursuant to NEPA speak for themselves.  Except as expressly admitted, the allegations of paragraph 36 are denied.

37.     TVA admits that the regulatory language contained in paragraph 37 is accurately quoted in part and states that NEPA and the regulations promulgated pursuant to NEPA speak for themselves.  Except as expressly admitted, the allegations of paragraph 37 are denied.

38.     Answering the allegations of paragraph 38, TVA states that NEPA and the regulations promulgated pursuant to NEPA speak for themselves.  Except as expressly admitted, the allegations of paragraph 38 are denied.

**Whether to Prepare an EIS**

39.     TVA admits that the regulatory language contained in paragraph 39 is accurately quoted in part and states that NEPA and the regulations promulgated pursuant to NEPA speak for themselves.  Except as expressly admitted, the allegations of paragraph 39 are denied.

40.     Answering the allegations of paragraph 40, TVA states that NEPA and the regulations promulgated pursuant to NEPA speak for themselves.  Except as expressly admitted, the allegations of paragraph 40 are denied.

41.     TVA admits that language from TVA's NEPA Procedures contained in paragraph 41 is accurately quoted in part and that TVA's NEPA Procedures speak for themselves.  Except as expressly admitted, the allegations of paragraph 41 are denied.

42.     Answering the allegations of paragraph 42, TVA admits that the construction of a new major power generating facility is an action that *normally* requires an EIS, but denies that either TVA's or CEQ's NEPA Procedures *mandates* the preparation of an EIS for this action under; TVA further denies that it was required to prepared an EIS for proposed Alternative C in this case.  Except as expressly admitted, the allegations of paragraph 42 are denied.

**What an EIS Requires**

43.     Answering the allegations of paragraph 43, TVA states that NEPA and the regulations promulgated pursuant to NEPA speak for themselves.  Except as expressly admitted, the allegations of paragraph 43 are denied.

44.     TVA admits that the statutory and regulatory language contained in paragraph 44 is accurately quoted in part and that NEPA and the regulations promulgated pursuant to NEPA speak for themselves.  Except as expressly admitted, the allegations of paragraph 44 are denied.

45.     Answering the allegations of paragraph 45, TVA states that NEPA and the regulations promulgated pursuant to NEPA speak for themselves.  Except as expressly admitted, the allegations of paragraph 45 are denied.

46.     TVA admits that the regulatory language contained in paragraph 46 is accurately quoted in part and that NEPA and the regulations promulgated pursuant to NEPA speak for themselves.  Except as expressly admitted, the allegations of paragraph 46 are denied.

47.     Answering the allegations of paragraph 47, TVA admits that the referenced regulation encourages agencies to tier from a broad environmental impact statement to other NEPA documents that "shall concentrate on the issues specific to the subsequent action."  Except as expressly admitted, the allegations of paragraph 47 are denied.

48.     TVA admits that the regulatory language contained in paragraph 48 is accurately quoted in part and that NEPA and the regulations promulgated pursuant to NEPA speak for themselves.  Except as expressly admitted, the allegations of paragraph 48 are denied.

49.     TVA admits that the regulatory language contained in paragraph 49, which applies to Environmental Impact Statements, is accurately quoted in part and that NEPA and the regulations promulgated pursuant to NEPA speak for themselves.  Except as expressly admitted, the allegations of paragraph 49 are denied.

### The Administrative Procedure Act

50.     Answering the allegations of paragraph 50, TVA admits that the Administrative Procedure Act governs judicial review of an agency's compliance with NEPA.  Except as expressly admitted, the allegations of paragraph 50 are denied.

51.     TVA admits that the statutory language contained in paragraph 51 is accurately quoted in part and that the APA speaks for itself.  Except as expressly admitted, the allegations of paragraph 51 are denied.

**The Tennessee Valley Authority Act**

52.     TVA admits that the statutory language contained in paragraph 52 is accurately quoted in part and that the TVA Act speaks for itself.  Except as expressly admitted, the allegations of paragraph 52 are denied.

53.     TVA admits that the statutory language contained in paragraph 53 is accurately quoted in part and that the Energy Policy Act of 1992 speaks for itself.  Except as expressly admitted, the allegations of paragraph 53 are denied.

54.     TVA admits that the statutory language contained in paragraph 54 is accurately quoted in part and that the Energy Policy Act of 1992 speaks for itself.  Except as expressly admitted, the allegations of paragraph 54 are denied.

55.     TVA admits that the statutory language contained in paragraph 55 is accurately quoted in part and that the Energy Policy Act of 1992 speaks for itself.  Except as expressly admitted, the allegations of paragraph 55 are denied.

**FACTUAL BACKGROUND**

56.     Answering the allegations of paragraph 56, TVA admits that Plaintiffs' lawsuit challenges TVA's action at the Paradise Fossil Plant, but denies the substance of those allegations.

**The Paradise Plant**

57.     Admitted.

58.     Admitted.

59.     TVA admits the allegations of the first, second, third and fifth sentences of paragraph 59.  Answering the allegations of the fourth sentence of paragraph 59, TVA states that although the emissions of $NO_x$ and $SO_2$ at Units 1 and 2 at Paradise are sufficiently low to meet current regulations governing those pollutants, emissions of particulate matter at Units 1 and 2

will not meet EPA's Mercury and Air Toxics Standards.  Except as expressly admitted, the allegations of paragraph 59 are denied.

60.     Answering the allegations of paragraph 60, TVA admits that Paradise Unit 2 achieved 259 days of continuous operation in 2013, and denies all remaining allegations of paragraph 60.

### The TVA Decision Making Timeline

61.     Answering the allegations of the first sentence of paragraph 61, TVA admits it installed flue gas desulfurization systems on Paradise Units 1 and 2 in the early 1980s. Answering the allegations of the second sentence of paragraph 61, TVA admits that through 2011 TVA has spent approximately $5.4 billion on emissions controls on the fossil-fuel plants in its system across the Tennessee Valley region.  Answering the allegations of the third sentence of paragraph 61, TVA admits that part of this system-wide expenditure on emissions controls included the installation of selective catalytic reduction systems and flue gas desulfurization systems at the Paradise Fossil Plant.  Except as expressly admitted, the allegations of paragraph 61 are denied.

62.     Denied.

63.     Admitted.

64.     Denied.

65.     Answering the allegations of paragraph 65, TVA admits that the TVA Board approved a budget for installation of air emission controls at Paradise Units 1 and 2 in August 2012 and that the approval was contingent upon satisfactory environmental review.  Except as expressly admitted, the allegations of paragraph 65 are denied.

66.     Answering the allegations of the first sentence of paragraph 66, TVA admits that a Draft Environmental Assessment for the Paradise Fossil Plant Units 1 and 2 Mercury and Air

Toxics Standards Compliance Project was released for public comment in August 2013 and that a Final Environmental Assessment was released in November 2013.  Answering the allegations of the second sentence of paragraph 66, TVA states that the Draft Environmental Assessment was out for a 33-day public comment period.  Except as expressly admitted, the allegations of paragraph 66 are denied.

67.     Answering the allegations of paragraph 67, TVA admits that it received 304 comment submissions and that the majority of the comments supported the continued use of coal in Paradise Units 1 and 2.  Except as expressly admitted, the allegations of paragraph 67 are denied.

68.     Answering the allegations of paragraph 68, TVA admits the TVA Board of Directors conditionally approved the budget for a capital project for installation of emission controls on Paradise Units 1 and 2 at the August 2012 TVA Board meeting subject to completion of environmental reviews and analyses; and that after considering TVA's system reliability and stability requirements and other operational needs, the costs and timing necessary to install emission controls at Paradise Units 1 and 2, and the outlook for future regulations applicable to coal-fired units, the Board approved the cancellation of the budget for the Paradise Fossil Plant Unit 1 and 2 controls project in November 2013.  Except as expressly admitted, the allegations of paragraph 68 are denied.

69.     Denied.

70.     Denied.

**The Environmental Assessment Process**

71.     Answering the allegations of paragraph 71, TVA states that it issued a Draft Environmental Assessment in August 2013 for a 33-day public comment period and that the Draft Environmental Assessment analyzed nine alternatives, including:  (a) a No Action

Alternative under which TVA would continue to operate Paradise Fossil Plant's Units 1 and 2

without implementing activities to comply with EPA's Mercury and Air Toxics Standards;

(b) Alternative B under which TVA would install and operate pulse jet fabric filters on Paradise

Fossil Plant's Units 1 and 2; and (c) Alternative C under which TVA would construct and

operate a combustion turbine/combined cycle plant.   Except as expressly admitted, the

allegations of paragraph 71 are denied.

72.     Answering the allegations of paragraph 72 including all its subparts, TVA denies

that public comments raised all the issues set forth in the Complaint.

73.     Denied.

74.     Answering the allegations of paragraph 74, TVA admits that TVA issued a Final

Environmental Assessment and Finding of No Significant Impact on November 13, 2013, which

concluded neither Alternative B (installation of emissions controls) nor Alternative C

(a combustion turbine/combined cycle plan) would have a significant effect on the environment,

and that the TVA Board approved the construction of the Paradise Gas Plant (Alternative C),

which was identified in the Environmental Assessment as the preferred alternative.  Except as

expressly admitted, the allegations of paragraph 74 are denied.

75.     Denied.

76.     TVA admits that the regulatory language contained in paragraph 76, which

applies to Environmental Impact Statements, is accurately quoted in part and that NEPA and the

regulations promulgated pursuant to NEPA speak for themselves.  Except as expressly admitted,

the allegations of paragraph 76 are denied.

77.     Denied.

78.     Answering the allegations of paragraph 78, TVA admits that MATS does not regulate $CO_2$ emissions.  Except as expressly admitted, the allegations of paragraph 78 are denied.

79.     Denied.

80.     Denied.

81.     Denied.

82.     TVA admits the allegations of the first sentence of paragraph 82, but states that TVA's Environmental Assessment further states "the investments to meet regulations at coal plants are expected to be more as borne out by EPA's recent rulemaking efforts for coal-fired plants under the Clean Air Act, Clean Water Act and the Resource Conservation and Recovery Act."  Except as expressly admitted, the allegations of paragraph 82 are denied.

83.     Answering the allegations of the third sentence of paragraph 83, TVA admits that the Environmental Assessment's response to a comment is accurately quoted in part.  Except as expressly admitted, the allegations of paragraph 83 are denied.

84.     Denied.

85.     Answering the allegations of the second sentence of paragraph 85, TVA admits that the excerpt from the Environmental Assessment is accurately quoted in part.  Except as expressly admitted, the allegations of paragraph 85 are denied.

86.     Answering the allegations of paragraph 86, TVA admits that the TVA Board of Directors conditionally approved installation of emissions controls at TVA's Gallatin Fossil Plant contingent upon satisfactory completion of all environmental reviews in August 2011, that TVA analyzed the emission controls project in a Draft Environmental Assessment that was released for public comment, that TVA issued a Final Environmental Assessment and Finding of No Significant Impact for the Gallatin projects on March 12, 2013, and that thereafter TVA's

Chief Executive Officer authorized the project because Gallatin was vital to achieving the Board's mandate of a "more balanced portfolio," and because the projects would greatly improve Gallatin's environmental profile.  Except as expressly admitted, the allegations of paragraph 86 are denied.

87.    Answering the allegations of the first sentence of paragraph 87, TVA admits that NEPA requires evaluation of the environmental impacts of major federal actions significantly affecting the quality of the human environment.  TVA denies all remaining allegations of paragraph 87.

88.    Denied.

89.    Denied.

**First Claim for Relief:**
**VIOLATION OF NEPA AND APA –**
**<u>Failure to Prepare an EIS</u>**

90.    TVA incorporates its responses to the preceding paragraphs as if set forth in full.

91.    Denied.

92.    TVA admits that the statutory and regulatory language contained in paragraph 92 is accurately quoted in part and states that NEPA and the regulations promulgated pursuant to NEPA speak for themselves.  Except as expressly admitted, the allegations of paragraph 92 are denied.

93.    TVA admits that the language from TVA's NEPA procedures contained in paragraph 93 is accurately quoted in part and states that TVA's NEPA procedures speak for themselves.  Except as expressly admitted, the allegations of paragraph 93 are denied.

94.    Denied.

95.    Admitted.

96.    Denied.

97.     Denied.

98.     Denied.

99.     Denied.

100.    Denied.

101.    Denied.

102.    Answering the allegations of paragraph 102, TVA states that NEPA and the regulations promulgated pursuant to NEPA speak for themselves.  Except as expressly admitted, the allegations of paragraph 102 are denied.

103.    Denied.

104.    Admitted.

**Second Claim for Relief:**
**VIOLATION OF NEPA AND APA –**
**Failure to Adequately Consider a Legitimate No Action Alternative**

105.    TVA incorporates its responses to the preceding paragraphs as if set forth in full.

106.    Denied.

107.    TVA admits that the regulatory language contained in paragraph 107 is accurately quoted in part and that NEPA and the regulations promulgated pursuant to NEPA speak for themselves.  Except as expressly admitted, the allegations of paragraph 107 are denied.

108.    Admitted.

109.    Denied.

110.    Denied.

111.    Answering the allegations of paragraph 111, TVA admits that its NEPA analysis is reviewable under the Administrative Procedure Act, but denies that the No Action Alternative it analyzed was not a "viable" No Action Alternative.  Except as expressly admitted, the allegations of paragraph 111 are denied.

14

**Third Claim for Relief**
**VIOLATION OF NEPA AND APA –**
**Failure to Examine Reasonable Alternatives**

112.    TVA incorporates its responses to the preceding paragraphs as if set forth in full.

113.    Denied.

114.    Answering the allegations of paragraph 114, TVA states that NEPA and the regulations promulgated pursuant to NEPA speak for themselves.

115.    Denied.

116.    Denied.

117.    Denied.

118.    Answering the allegations of paragraph 118, TVA admits that its NEPA analysis is reviewable under the Administrative Procedure Act, but denies that it failed to evaluate a range of reasonable alternatives.  Except as expressly admitted, the allegations of paragraph 118 are denied.

**Fourth Claim for Relief**
**VIOLATION OF NEPA AND APA –**
**Pre-Determination of Decision**

119.    TVA incorporates its responses to the preceding paragraphs as if set forth in full.

120.    Denied.

121.    Answering the allegations of paragraph 121, TVA states that NEPA and the regulations promulgated pursuant to NEPA speak for themselves.

122.    Denied.

123.    Denied.

124.    Answering the allegations of paragraph 124, TVA admits that its NEPA analysis is reviewable under the Administrative Procedure Act, but denies that it predetermined its NEPA

decision outside the NEPA process.  Except as expressly admitted, the allegations of paragraph 124 are denied.

### Fifth Claim for Relief
### VIOLATION OF NEPA AND APA –
### Failure to Provide for Public Comment

125.    TVA incorporates its responses to the preceding paragraphs as if set forth in full.

126.    Denied.

127.    Answering the allegations of paragraph 127, TVA states that NEPA and TVA NEPA procedures speak for themselves.

128.    Denied.

129.    Answering the allegations of paragraph 129, TVA admits that a Draft Environmental Assessment for the Paradise Fossil Plant Units 1 and 2 Mercury and Air Toxics Standards Compliance Project was released for public comment on August 2013 and that a Final Environmental Assessment was released in November 2013.  Except as expressly admitted, the allegations of paragraph 129 are denied.

130.    Denied.

131.    Denied.

132.    Answering the allegations of paragraph 132, TVA admits that its NEPA analysis is reviewable under the Administrative Procedure Act, but denies that it failed to provide for public comment.  Except as expressly admitted, the allegations of paragraph 132 are denied.

### Sixth Claim for Relief
### VIOLATION OF NEPA AND APA –
### Impermissible Segmentation of Environmental Impact

133.    TVA incorporates its responses to the preceding paragraphs as if set forth in full.

134.    Denied.

16

135.    Answering the allegations of paragraph 135, TVA states that NEPA and the regulations promulgated pursuant to NEPA speak for themselves.

136.    Answering the allegations of paragraph 136, TVA admits that the regulatory language contained in paragraph 136 is accurately quoted in part and that NEPA and the regulations promulgated pursuant to NEPA speak for themselves.

137.    Denied.

138.    Answering the allegations of the first sentence of paragraph 138, TVA admits that the Environmental Assessment is properly quoted in part.  TVA denies the allegations of the second sentence of paragraph 138.  Except as expressly admitted, the allegations of paragraph 138 are denied.

139.    Denied.

140.    Denied.

141.    Denied.

142.    Denied.

143.    TVA admits that language contained in paragraph 143 is accurately quoted in part from TVA's Finding of No Significant Impact.  Except as expressly admitted, the allegations of paragraph 143 are denied.

144.    Denied.

145.    Denied.

146.    Answering the allegations of paragraph 146, TVA admits that its NEPA analysis is reviewable under the Administrative Procedure Act, and states that less imminent actions such as potential decommissioning and demolition of fossil Units 1 and 2 will be analyzed if and when those actions are proposed.  Except as expressly admitted, the allegations of paragraph 146 are denied.

147.     Answering the allegations of paragraph 147, TVA admits that its NEPA analysis is reviewable under the Administrative Procedure Act, but denies that it failed to evaluate the gas pipeline(s) and/or fuel oil storage tank components of Alternative C.  Except as expressly admitted, the allegations of paragraph 147 are denied.

**Seventh Claim for Relief:**
**Violation of the TVA Act**

148.     TVA incorporates its responses to the preceding paragraphs as if set forth in full.

149.     Denied.

150.     TVA admits that the statutory language contained in paragraph 150 is accurately quoted in part and that the Energy Policy Act of 1992 speaks for itself.  Except as expressly admitted, the allegations of paragraph 150 are denied.

151.     TVA admits that the statutory language contained in paragraph 151 is accurately quoted in part and that the Energy Policy Act of 1992 speaks for itself.  Except as expressly admitted, the allegations of paragraph 151 are denied.

152.     Denied.

153.     Denied.

154.     Denied.

155.     Answering the allegations of paragraph 155, TVA admits that EPA's recent rule-makings concerning $CO_2$ emissions from new and existing fossil fuel-fired generation are proposed rules but TVA denies that it is arbitrary and capricious for an agency to consider future or impending regulations when making decisions.  Except as expressly admitted, the allegations of paragraph 155 are denied.

156.     Denied.

157.     Denied.

158.   Admitted.

## Eighth Claim for Relief:
## Preliminary and Permanent Injunctions

159.   TVA incorporates its responses to the preceding paragraphs as if set forth in full.

160.   Denied.

161.   Denied.

162.   Denied.

163.   Denied.

## ANSWER TO PRAYER FOR RELIEF

Defendant denies that Plaintiffs are entitled to the relief requested, or to any relief.

## AFFIRMATIVE DEFENSES

### First Defense

The actions taken by TVA and challenged in this Complaint were reasonable and consistent with and authorized by the TVA Act and applicable federal statutes and regulations, were reasonably related to the governmental functions carried out by TVA, and were not arbitrary, capricious, or otherwise contrary to law.

### Second Defense

Public commentary on the Draft Environmental Assessment did not raise all issues alleged in the Complaint; Plaintiffs are foreclosed from pursuing those issues not raised in the public comment period.

### Third Defense

TVA's decisions employing a least-cost planning approach are committed to agency discretion.

## Fourth Defense

One or more Plaintiffs lack standing to pursue the asserted NEPA claims.


WHEREFORE, TVA prays that this action be dismissed as to it and that TVA recover its

costs and such other relief, legal and equitable, to which it is entitled.


Respectfully submitted,

*s/Maria V. Gillen*
Edwin W. Small, Deputy General Counsel
Maria V. Gillen, Senior Attorney
Frances Regina Koho, Attorney
Defendant GENERAL COUNSEL'S OFFICE
400 West Summit Hill Drive
Knoxville, Tennessee 37902-1401
Telephone 865.632.7741

Attorneys for Tennessee Valley Authority

26573225

## CERTIFICATE OF SERVICE

On September 8, 2014, I electronically filed this document through the ECF system,

which will send a notice of electronic filing to:

> Donald Kelly, Esq.
> Lisa C. DeJaco, Esq.
> G. Brian Wells, Esq.
> Courtney Ross Samford, Esq.
> Wyatt, Tarrant & Combs LLP
> dkelly@wyattfirm.com
> ldejaco@wyattfirm.com
> bwells@wyattfirm.com
> csamford@wyattfirm.com
> Attorneys for Plaintiffs

*s/Maria V. Gillen*

Attorney for Tennessee Valley Authority