IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

| | |
|---|---|
| KENTUCKY COAL ASSOCIATION, INC., ) <br> JAMES ROGERS, III, J.L. ROGERS FAMILY, ) <br> LLC, TALMAGE ROGERS, TALMAR OF FL, ) <br> LLC, PAT EARLY, KIRSTINE EARLY, ) <br> BUCKINGHAM HOLLOW, LLC, KEVIN ) <br> LAWRENCE AND BIG BUCKS, LLC ) <br>         Plaintiffs ) <br> v. ) <br> ) <br> TENNESSEE VALLEY AUTHORITY ) <br>         Defendant ) | Case No. 4:14-CV-00073-JHM |

**REPLY MEMORANDUM IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

Plaintiffs Kentucky Coal Association, Inc., James Rogers, III, J.L. Rogers Family, LLC, Talmage Rogers, Talmar of FL, LLC, Pat Early, Kirstine Early, Buckingham Hollow, LLC, Kevin Lawrence and Big Bucks, LLC (referred to collectively herein as "Plaintiffs"), submit this Reply memorandum in support of their Motion for Preliminary Injunction against Defendant Tennessee Valley Authority ("TVA").

TVA's strategy is clear from the start: it endeavors to direct this Court's focus away from the question at the heart of the Complaint – whether NEPA, the CEQ regulations, and TVA's own implementing procedures require TVA to conduct an EIS when the EA indicates significant environmental impacts - and towards an unprecedented legal analysis which might be more favorable for TVA. TVA asserts on the first page of its Response: "Although it is clear Plaintiffs and the various specialists they have gathered to criticize TVA's decision vehemently disagree with TVA's switch to natural gas generation at a subset of the Paradise units, their contrary policy views do nothing to undermine the reasoned decision-making in which TVA engaged." While it is true that Plaintiffs believe upgrading the existing

coal-fueled units will have less environmental impact and lower cost than TVA's chosen course, this action specifically challenges TVA's failure to perform an EIS or engage in least-cost planning in connection with its decision,[1] which failure is causing Plaintiffs immediate and irreparable harm.

## Plaintiffs Meet Their Burden As to Success on the Merits.

Rather than grapple with the substantial questions on the merits set forth in the Motion for Preliminary Injunction, TVA punts the entire discussion of the merits to its Motion for Judgment on the Administrative Record wherein TVA tries to hide its inadequate evaluation of the proposed project behind the "arbitrary and capricious" standard. The Motion for Judgment mischaracterizes the purpose and scope of an EA, which must determine that no impact of the proposed project will rise to the level of significance in order to support a Finding of No Significant Impact (FONSI), versus an EIS wherein an agency must identify and evaluate all the impacts of a project but may, in its discretion, decide to proceed with a project even in the face of significant impacts if the agency deems that course most appropriate. Plaintiffs will more fully address this fundamental misdirection by TVA in their Response to the Motion for Judgment.

There is no denying that courts should be deferential to agencies when those agencies are exercising their statutorily assigned discretion. But there is also no denying that the statutorily mandated process an agency must use is not subject to agency discretion. The purpose of an EIS is to reveal and fully elucidate all of a project's impacts; once fully evaluated via the EIS process, an agency can proceed with a proposed action

---

[1] Perhaps TVA can come to the same outcome after appropriate analysis of the environmental impact and cost of the alternatives. Plaintiffs suspect that if such were the case, TVA would not have evaded its responsibilities to date.

2

despite its impacts, even if those impacts are significant. The same is not true for an EA process. To support a FONSI, an EA must demonstrate that the specific threshold of "significant impact" has not been crossed. The EA prepared by TVA here falls woefully short of that showing. TVA failed to demonstrate that significant impacts would not occur when it deferred the analysis of impacts related to the natural gas pipelines to future NEPA analysis, and did not consider site specific impacts of the water intake structure or fuel storage tanks. In order to get its FONSI, TVA merely avoided analysis of wetlands, historic properties, threatened and endangered species that might be affected by the pipeline or water intake structure – announcing that those analyses would be saved for another day. This is not the "hard look" that NEPA requires.

TVA urges the Court to ignore the expert material submitted along with Plaintiffs' Motion for Preliminary Injunction, on the grounds that judicial review of this matter must be limited to the administrative record, which Plaintiffs have not made a motion to supplement to date. As TVA acknowledges, part of one of the three expert reports (the Clemente report) was submitted to TVA during the comment period and is actually in the Administrative Record.[2] This and the other material tendered by Plaintiffs – the Potomac-Hudson Engineering letter report and the Energy Ventures Analysis – are not improper supplementation of the administrative record. Rather, they present wholly proper and necessary comment upon the (at that time merely anticipated) contents of the

---

[2] TVA suggests that the remainder of the Clemente report is inappropriate because it pertains to the least-cost planning program, should have been submitted during public comment on the IRP, and should not be addressed in this forum. As Plaintiffs will further address in the Response to the Motion for Judgment, TVA is wrong to suggest that the least-cost planning process is not subject to judicial review. What is more, TVA has (wrongly) relied on the IRP as part of the Administrative Record in this case, such that TVA has little room to stand on in protesting the introduction of matters allegedly related to the IRP in this litigation.

3

administrative record. Moreover, acknowledging that it failed to follow its own NEPA Procedures by not allowing public comment [*see* Complaint, Fifth Claim for Relief], on July 30, 2014, TVA requested comments on its FONSI until August 29. [See Administrative Record ("AR") Doc. No. 7.] Plaintiffs' expert reports were submitted as attachments to the instant Motion on August 27, mooting any argument that TVA was unaware of these materials during the window for its review of public comment.

    Courts are particularly in need of scientific assistance in evaluating the scope of the record presented in NEPA litigation. A federal court is not – and cannot be expected to be – an expert on applying NEPA in every context in which it arises. Case law in the Sixth Circuit and around the country acknowledges a court's right and responsibility to consider materials not contained within the administrative record when necessary to determine whether the agency considered all the relevant factors or adequately explained its decision. *See Sierra Club v. Slater*, 120 F.3d 623, 628 (6th Cir. 1997). "An agency may not unilaterally determine what constitutes the Administrative Record…. Having the 'whole record' before it is crucial to the court's review under the APA." *Miami Nation of Indians of Indiana v. Babbitt*, 979 F. Supp. 771 (N. D. Ind. 1996).

    The Supreme Court has held that a district court may take extra-record evidence of an explanatory nature to aid in the understanding of an unclear administrative record, *Camp v. Pitts*, 411 U.S. 138 (1973), and in the NEPA context, courts apply this exception to admit extra-record evidence that explains an agency decision -- *e.g.*, *Sierra Club v. Marsh*, 976 F.2d 763 (1st Cir. 1992); *Missouri Coalition for the Envt. v. U. S. Army Corps of Eng'rs*, 866 F.2d 1025 (8th Cir. 1989); *Conservation Northwest v. Rey*, 674 F. Supp. 2d 1232 (W.D. Wash. 2009) (allowing introduction of information that would help explain complex

4

subject matters) – or that addresses whether the agency considered all relevant factors. *E.g. Humane Soc. of U. S. v. Locke*, 626 F.3d 1040 (9th Cir. 2010) (allowing extra-record evidence to determine if agency considered all relevant factors and has explained its decision); *Border Power Plant Working Group v. Dept. of Energy*, 567 F. Supp. 2d 1040 (S.D. Cal. 2006) (same); *Humane Soc'y v. U. S. Dept. of Commerce*, 432 F. Supp. 2d 4 (D. D.C. 2006) (allowing introduction of extra-record evidence as proof of an environmental factor inappropriately excluded from consideration by the agency).[3]

NEPA cases often require the court to consider extra-record evidence because "a primary function of the court is to insure that the information available to the decision-maker includes an adequate discussion of environmental effects and alternatives, which can sometimes be determined only by looking outside the administrative record to see what the agency may have ignored." *County of Suffolk v. Secretary of the Interior*, 562 F. 2d 1368, 1384 (2d Cir. 1977) (internal citations omitted.) Whether in challenges to the sufficiency of an EIS or in suits like this one attacking an agency determination that no EIS is necessary, allegations that an agency has "failed adequately to discuss some reasonable alternative or otherwise swept stubborn problems or serious criticism under the rug, raise issues sufficiently important to permit the introduction of new evidence in the district court, including expert evidence with respect to technical matters." *Id.* at 1384-85 (internal citations and quotations omitted.) *See also National Audubon Soc'y v. U.S. Forest Serv.*, 46 F.3d 1437 (9th Cir. 1994); *Anglers of the AU Sable v. U.S. Forest Serv.*, 565 F. Supp. 2d 812 (E.D. Mich. 2008); *Fund for Animals v. Williams*, 391 F. Supp. 2d 191 (D.D.C. 2005)

---

[3] TVA admits that supplementation of the administrative record is appropriate "when the court needs certain background information to assess whether the agency considered all relevant factors." *See* Response at 3.

5

(consideration of extra-record evidence "is warranted in challenges to the procedural validity of an agency's action.")

The expert material that accompanied the Motion for Preliminary Injunction informs the Court about the significant gaps in TVA's analysis of the environmental effects of its proposed project. TVA derides the expert material as "simply the contrary views of persons hired by those opposed to the Paradise decision to critique it," and says that the arbitrary and capricious standard requires the Court to defer to the opinions of the agency. [Response at 5.] For support, TVA quotes *Marsh v. Oregon Nat. Res. Council*, 490 U.S. 360, 378 (1989) – yet immediately after the sentence quoted by TVA, the Supreme Court went on to caution courts not to "automatically defer" to an agency's decision "without carefully reviewing the record and satisfying themselves that the agency has made a reasoned decision.... A contrary approach would not simply render judicial review generally meaningless, but would be contrary to the demand that courts ensure that agency decisions are founded on a reasoned evaluation of the relevant factors." *Id.* The same warning applies here, where TVA attempts to convince this Court to defer to its decision to issue a FONSI rather than conduct an EIS.[4]

---

[4] TVA continues its misdirection with its attack on the Potomac Hudson report, which according to TVA, is an "attempt to usurp the Court from its role in assessing the sufficiency of TVA's EA under the deferential arbitrary and capricious standard." [Response at 6.] For support, TVA cites *Netherlands Ins. Co. v. Lexington Ins. Co.*, 2013 WL 2120817 (W. D. KY. 2013), a case wholly inapposite to the matter at bar. In *Netherlands*, a dispute over an insurance contract, the court granted a *Daubert* motion to exclude the expert opinions of an attorney with experience in the insurance industry, who opined on whether a contract had been formed via an exchange of emails and on the meaning of various policy provisions in the purported contract. Calling these opinions "nothing more than a legal conclusion," the court noted that "the trial judge does not need the judgment of witnesses" to give him "expert testimony on the law." *Id.* at * 9. By contrast, the experts at Potomac Hudson are offering this Court reasoned information not normally within a judge's purview as to the scope of questions and answers that should be contained within an agency's environmental assessment of a project like the one at issue.

TVA's contention that the expert material cannot be considered by this Court because not (all) of the issues therein were raised in the public comment period [Response at 3] is equally misguided. As previously noted, after Plaintiffs pointed out that TVA failed to follow its own NEPA Procedures [Complaint, Count 5], TVA solicited comment on its FONSI, during which period the reports at issue were submitted as attachments to the Plaintiffs' Motion for Preliminary Injunction– a fact ignored by TVA. More fundamentally, the statute and its implementing regulations are binding on TVA whether the public is aware of those requirements or not. The comment period is not a mechanism by which the public must educate TVA on the requirements of NEPA. The Second Circuit rejected the same waiver argument in *Suffolk Cty, supra*:

> Nor can we accept appellants' contention that plaintiffs' failure to present the evidence to the Department in the first instance for incorporation into the EIS barred its consideration by the district court. <u>To so hold would in effect shift the burden of insuring the adequacy of the EIS to environmental challengers, even though the primary and nondelegable responsibility for providing such analysis lies with the agency.</u>

562 F.2d. at 1385 (emphasis added). The court went on to say that such evidence would be probative if "it tended to show … that the agency's research or analysis was clearly inadequate," *id.* – which is of course exactly the purpose for which the expert material here was tendered by Plaintiffs.

TVA seeks to bypass the standard for evaluating success on the merits at the preliminary injunction stage by deflecting the Court's attention to its Motion for Judgment on the Record. Plaintiffs meet their required showing, raising numerous questions going to the merits that are "so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation." *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 402 (6th Cir. 1997). TVA is unable to deny that Plaintiffs

7

have made that showing. Rather than re-hash all the points made in the original Memorandum, Plaintiffs will focus on three obviously serious and significant questions.[5]

One: TVA's own NEPA Procedures say that TVA should normally prepare an EIS when it constructs a major new power-generating facility – and the construction of a brand-new 1000+ MW CC/CT plant like the one at issue here is both new and major by all measures. TVA initially characterized the CC/CT plant as the "continued operation" of an existing facility. [EA Appendix A.] When challenged on this point in the public comment period, TVA changed its position, claiming that its Procedures calling for an EIS do not apply to "maintenance" and "upgrades" of existing units. [EA Appendix C, Comment 27.] Clearly, the proposed project is neither a continuation of the operation of the existing coal-fueled Paradise Units 1 and 2, nor the maintenance or upgrade of those units, both of which will be decommissioned and demolished.

TVA abandons both its prior positions when addressing this issue in the Motion for Judgment on the Record. Instead, TVA attacks a straw man, saying that "normally" does not mean that TVA must always conduct an EIS. To be sure, "it is true, that regulations of this type do not inevitably create a mandatory duty to prepare an EIS. The fact that there is no mandatory duty, however, does not mean that this regulation has no effect at all." *Davis v. Mineta*, 302 F.3d 1104, 1117 (10th Cir. 2002). As the Tenth Circuit explained, an agency regulation that states an EIS will normally be prepared in certain circumstances imposes on the agency "the burden of establishing why that presumption should not apply in this particular case. If [the agency] arbitrarily and capriciously failed to follow its own

---

[5] By incorporating its Motion for Judgment into its Response, TVA not only attempts to shift the legal inquiry but also expands the length of its Response. Plaintiffs will fully respond to the entirety of TVA's Motion in due course.

8

regulation, its decision must be reversed." *Id.* (emphasis original)*.* In the Motion for Judgment on the Record, TVA makes no effort to carry its burden and show why the presumption should not apply here. Without doubt, TVA's chosen course is neither the "continued operation" nor "maintenance or upgrade" of existing units. TVA's failure to conduct an EIS in light of its own Procedures – particularly when coupled with its failure to adequately address the reasons it did not do so – raises a serious and substantial question on the merits which support the entry of a Preliminary Injunction pending this Court's full investigation.

Two: TVA repeatedly shunted aside issues for further review at a later point or by a different agency throughout its evaluation of Alternative C in the EA. For instance, TVA did not (and could not) evaluate the impact on wetlands because it did not identify the location of the planned pipeline and water intake structures for Alternative C. As to endangered species, the EA acknowledges that several listed species and habitat could be affected by Alternative C, but defers the analysis of these effects to future study and consultation; the same is true for biological vegetation and wildlife generally. The EA further acknowledges the presence of historic and cultural properties within the potential pipeline corridors, and states that there is the potential for adverse impacts to these resources, but TVA did not complete necessary studies to determine the extent of these impacts and has deferred consultation under Section 106 of the NHPA to the FERC licensing process. The acknowledgement of potentially significant environmental impacts without analysis constitutes impermissible segmentation of the assessment process.[6]

---

[6] Equally troubling is the total lack of analysis of the environmental impacts of TVA's proposed 5 million gallon fuel oil backup supply system, which the Administrative Record reveals is a "key assumption." [Paradise AR-00000354.]

In its Motion for Judgment, TVA says that it is proper for the evaluation to be pushed off because FERC will conduct a "refinement" of TVA's analysis once the exact pipeline route has been chosen. TVA admits that it did not fully evaluate these effects, and yet it issued a FONSI anyway. TVA asserts that it was entitled to do so as a matter of law, because it cannot be expected to predict the future – the future in this case being the precise location of a pipeline that is a necessary and related component of TVA's preferred project alternative. Contrary to TVA's position, CEQ Regulations provide that agency actions which will automatically trigger other actions that may require an EIS must be evaluated together. Whether NEPA permits TVA's dodge-and-defer procedure is a question of law for the Court to examine – not an inquiry of fact and scientific expertise upon which the agency is entitled to deference - and clearly it is substantial and serious.

Three: TVA's chosen project will indisputably have a significantly higher capital cost than installing a filter system per Alternative B, and replacing coal-fueled units at Paradise with a gas power generating facility will result in higher electricity rates for TVA rate-payers. TVA has a statutory mandate to conduct least-cost resource planning. The TVA Act requires TVA to "employ and implement a planning and selection process for new energy resources which evaluates the full range of existing and incremental resources … in order to provide adequate and reliable service to electric customers of the Tennessee Valley Authority at the lowest system cost." 16 U.S.C. § 831m-1(b)(1) (emphasis added).

In response to the facially irreconcilable difference between its statutory directive and its conduct, TVA asserts in the Motion for Judgment that the implementation of its least-cost planning program is not subject to judicial review. In support of this assertion, TVA cites not one case or other authority that has ever made such a holding with respect to

Section 831m of the TVA Act. Instead, TVA cites to authorities holding that TVA's rate-making process is not subject to judicial review. The rate-making process is governed by an entirely different provision of the TVA Act, Section 831n, which contains explicit language regarding TVA's discretion that is not present in the statutory section directing TVA to engage in least-cost planning.[7] At the least, Plaintiffs have identified a significant and serious question on the merits of their claim under the TVA Act which is "a fair ground for litigation and thus for more deliberate investigation." *Six Clinics*, 119 F.3d at 402.

### Plaintiffs Meet Their Burden As To Irreparable Harm.

TVA argues that "there will be nothing occurring on the ground that will cause irreparable harm to Plaintiffs or the environment" while the Court considers TVA's Motion for Judgment, because through the end of 2014 the planned work on the project is merely preparatory of the site and will occur in an established industrial area, and TVA describes the pipeline survey activity as "limited" – but even if TVA is accurately depicting the scope of the work to take place over the next few months, TVA utterly fails to grapple with the irreparable effects of allowing TVA to continue to pursue a project for which it has not conducted an adequate analysis of environmental impacts or engaged in least-cost planning. TVA has utterly failed to enumerate and analyze the risks that its decision to move to natural gas generation may have in terms of providing reliable and affordable energy for TVA's customers. There is literally no telling what irreparable damage TVA's proposed project may cause to the Green River, endangered species, other plant and animal

---

[7] Again, Plaintiffs will address TVA's arguments in full when they respond to the Motion for Judgment. The issue before the Court on this pending Motion for Preliminary Injunction is whether Plaintiffs have raised substantial questions as to the merits.

11

life, or historic and cultural interests, because TVA skipped over those analyses in order to push its preferred alternative forward.[8]

Plaintiffs cannot be responsible for enumerating those harms in the face of TVA's failure to conduct the full review the law demands. The irreparable harm to Plaintiffs, first and foremost, is the immeasurable harm engendered by TVA's failure to obey statutory directives about processes intended for the protection of Plaintiffs as tax-paying citizens, TVA's neighbors, and rate-paying customers – harm that cannot be quantified because of TVA's failure to conduct the appropriate analysis. If preliminary injunctive relief is not granted and TVA is allowed to proceed with construction during litigation, Plaintiffs may well lose their rights even if their claims should have been victorious. *See, e.g., Neighbors Organized to Insure a Sound Env't, Inc. v. McArtor*, 878 F.2d 174, 175 (6th Cir. 1989) (litigation over agency failure to perform EIS declared moot on appeal, as challenged construction was already complete). If a preliminary injunction is denied, Plaintiffs will not have an opportunity to litigate the case on the merits because the harm will have already occurred. Therefore this factor weighs heavily in Plaintiffs' favor. *See Buckeye Forest Council v. U.S. Forest Service*, 337 F. Supp. 2d 1030, 1039 (S.D. Ohio 2004).

### **Plaintiffs Meet Their Burden On Harm to Others and the Public Interest.**

This Court should raise a skeptical eyebrow at TVA's assertion that a preliminary injunction will cause harm to the public because it will prevent TVA from timely compliance with MATS. This supposed harm to TVA and the public is entirely TVA's own doing. The EPA announced standards to limit mercury, acid gases and other toxic pollution from power plants (MATS) in 2011, and the final Rule was published in February 2012. As

---

[8] TVA's failure is not excused because FERC will eventually conduct a NEPA review of the pipeline portions of the project. NEPA requires that all related actions must be considered together.

evidenced by TVA's initial decision to retrofit the existing coal units, there is absolutely no requirement to construct an entire new 1,025 MW power-generating facility in order to comply with MATS. As demonstrated in the IRP and the directives of the TVA Board of Directors through November 2013, for more than a year after MATS was finalized TVA had a plan and approved funding to comply with MATS at Paradise by installing a jet pulse fabric filter system on the existing coal-fueled units. At what TVA depicts as the last possible moment, TVA decided wholly of its own volition to abandon that plan and move from coal to gas power generation at Paradise in conjunction with MATS compliance.

Plaintiffs cannot be held accountable for, nor this Court's meaningful review constrained by, TVA's own indecision. TVA asserts that delay in its compliance with MATS will delay health and environmental benefits to the public. The public's interest in TVA's compliance with MATS is no greater than the public's interest in TVA's statutory compliance with NEPA – particularly considering the unquantified, unanalyzed risks to the human environment and concomitant job losses, rate increases, and threats to reliable electricity that may come from TVA's choice to abandon coal for natural gas power at the Paradise facility.

If TVA had conducted its process appropriately in the first place, rather than completely changing course almost two years after the MATS standards were announced, TVA would not now be facing the time crunch it alleges. Moreover, the Administrative Record reveals that TVA's original plan to install filters at the existing coal-fueled units could still be accomplished in the time currently allotted for MATS compliance. [Paradise AR 00000345.] If TVA runs out of time to complete the building of a new power plant as a MATS compliance measure, it can return to its original plan to install a jet pulse fabric filter

13

system at the existing coal units – a course that would not require the additional extensions of deadline that TVA is seeking in order to accommodate its extensive construction plans, bringing health benefits to the public all the more quickly. Thereafter, if TVA still believes that a change to gas power generation at Paradise is the appropriate course, subject to the least-cost planning constraints of the TVA Act, it can conduct the requisite EIS to replace Units 1 and 2 with a gas-powered facility and construct such a facility at its leisure.

TVA cannot shelter behind its own flip-flop decision-making and its unforced error in shortchanging the NEPA process to perpetuate its error into the future. TVA created the harm which it now complains the public will suffer. This self-inflicted wound does not warrant denying Plaintiffs the preliminary injunctive relief so urgently required to allow this Court the opportunity to conduct a meaningful review and accord Plaintiffs meaningful relief from TVA's failure to obey the statutorily mandated processes.

## **CONCLUSION**

Plaintiffs have carried their burden to show they are entitled to a preliminary injunction. TVA has entirely failed to demonstrate that the serious questions on the merits raised by the Complaint and the Motion do not deserve careful and deliberate investigation by this Court, or that Plaintiffs will not suffer irreparable harm if TVA is allowed to proceed with its construction during the course of litigation. Any harm to TVA is self-induced, and the public interest favors preliminary relief in cases like this one. Plaintiffs respectfully request that the Court issue the proposed preliminary injunction, without requiring a bond.

        Respectfully submitted,
        */s/ Lisa C. DeJaco*
        WYATT, TARRANT & COMBS, LLP

        Donald J. Kelly dkelly@wyattfirm.com
        Lisa C. DeJaco ldejaco@wyattfirm.com
        500 West Jefferson Street, Suite 2800
        Louisville, KY  40202-2898
        502.589.5235

        G. Brian Wells bwells@wyattfirm.com
        Courtney Ross Samford
        csamford@wyattfirm.com
        250 W. Main Street, Suite 1600
        Lexington, Kentucky 40507-1746
        859.233.2012

        ***Counsel for Plaintiffs***

## CERTIFICATE OF SERVICE

On October 17, 2014, I electronically filed this document through the ECF system, which will send a notice of electronic filing to:

Edwin W. Small ewsmall@tva.gov
Maria V. Gillen mvgillen@tva.gov
Frances Regina Koho frkoho@tva.gov
TENNESSEE VALLEY AUTHORITY
OFFICE OF THE GENERAL COUNSEL
400 W. Summit Hill Drive
Knoxville, Tennessee 37902-1499
865-632-3021

        */s/ Lisa C. DeJaco*
        **One of Counsel for Plaintiffs**

61239428.1